UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA KELLER,<br><br>   Plaintiff,<br><br> v.<br><br>CHEGG, INC.,<br><br>   Defendant. | Case No. 22-cv-06986-JD<br><br>**ORDER RE ARBITRATION** |

As alleged in the first amended complaint, defendant Chegg, Inc. (Chegg) is an online platform that delivers educational products and services to high school and college students. Dkt. No. 31 ¶ 1. Chegg is said to have experienced four data breaches between 2017 and 2020. *Id.* ¶ 4. Named plaintiff Joshua Keller sued Chegg on behalf of himself and a putative class of "individuals whose data was impacted or otherwise compromised." *Id.* ¶ 118. Keller alleges that Chegg did not adequately protect customer data, for which he seeks damages, declaratory and injunctive relief under a variety of California common law and statutory claims.

Chegg asks to send the case to arbitration pursuant to the Federal Arbitration Act (FAA) and an arbitration clause in Chegg's Terms of Use (TOU). Dkt. No. 22. Keller filed an oversize opposition that did not conform to the Court's standing order with respect to page limits. Dkt. No. 35. On this one occasion, the Court will allow the oversize brief, but the parties are advised that in any future proceedings, non-conforming filings will be summarily stricken from the docket. The motion is suitable for decision without oral argument, *see* Civil L.R. 7-1(b), and the case is ordered to arbitration.

## LEGAL STANDARDS

The Court has detailed the standards governing a motion to compel arbitration under the FAA in several prior orders, which are incorporated here. *See Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-cv-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019). In pertinent part, the Court's role under Section 4 of the FAA "'is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2023 WL 187498, at *1 (N.D. Cal. Jan. 13, 2023) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). "If the party seeking to compel arbitration establishes both factors," the Court "'must order the parties to proceed to arbitration only in accordance with the terms of their agreement.'" *Id.* (quoting *Lifescan*, 363 F.3d at 1012).

The validity and scope of an agreement to arbitrate are determined by the Court unless the parties choose to delegate those questions to the arbitrator. *Cornet*, 2023 WL 187498, at *2 (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)). "A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law." *Id.* (*citing Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). "Challenges to the validity of a delegation clause may be directed to (1) 'the validity of the delegation clause itself,' or (2) 'the validity of the agreement to arbitrate or to the contract as a whole.'" *Id.* (quoting *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017)). The Court determines "any validity challenges directly addressed to delegation." *Alonso v. AuPairCare, Inc.*, No. 3:18-cv-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). Any challenge to the overall agreement to arbitrate is for the arbitrator. *Id.* (citing *McLellan*, 2017 WL 4551484, at *1).

## BACKGROUND

Keller's main objection to arbitration is that he did not consent to it. The record demonstrates otherwise.

1      To start, undisputed evidence establishes that Chegg routinely updated the TOU and
2  pushed notifications to customers about the updates. As the Chegg Vice President of Engineering
3  averred, when a customer logged in after an update, they saw a pop-up screen stating that Chegg
4  had "made some changes to the Arbitration Agreement." *See* Dkt. No. 22-1 (Xu Decl.) ¶¶ 6, 9;
5  Dkt. No. 36-1 (Supp. Xu Decl.) ¶ 4.[1] The pop-up window was scrollable and contained the full
6  text of the TOU. Dkt. No. 22-1 ¶¶ 7, 9; Dkt. No. 36-1 ¶ 4. It looks like this:

[Screenshot of Terms of Use and Privacy Policy pop-up with "I accept" button]

17 Chegg users were required to click "I accept" to access and use Chegg. *Id.* Chegg updated its
18 terms on February 19, 2019, March 17, 2021, and June 29, 2021, and sent out pop-up messages.
19 Dkt. No. 22-1 ¶ 9. Chegg tracked customers' acceptance of the updated TOUs. *Id.* at ¶ 8; Dkt.
20 No. 36-1 ¶ 2.

---

[1] Keller's objection to the Xu declarations on "best evidence" grounds, Fed. R. Evid. 1002, is overruled. The portions of the declarations establishing Chegg's practice of requiring user acceptance of its updated TOU are based on personal knowledge and do not recount the contents of missing documents. Dkt. No. 22-1 ¶¶ 1 & 6. For the pop-up window, Chegg's records contain only the template with placeholder dates, Dkt. No. 36-1 ¶ 4, so the screenshot provided is of the *original*, not a copy. The "printout[]" of Chegg's electronic record on the user Josh Keller is likewise acceptable. *Berezovsky v. Moniz*, 869 F.3d 923, 932 n.8 (9th Cir. 2017). Xu is "familiar with the internal system that tracks a customer's acceptance of Chegg's Terms of Use" and could testify thereto, Dkt. No. 36-1 ¶ 2, so the records would be admissible at trial. *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1045 (9th Cir. 2009) (computer records may be authenticated by person with knowledge of record-keeping practices).

3

Chegg posted seven revisions of the TOU between 2015 to the present, which are the years during which Keller used Chegg. *See* Dkt. Nos. 23-1, 23-2, 23-3, 23-4, 23-5, 23-6, 23-7.[2] All contain an arbitration provision that expressly states that arbitration will be governed by the FAA and the American Arbitration Association's (AAA) rules, waives both parties' right to participate in a class action, and delegates questions of arbitrability to the arbitrator. *See* Dkt. Nos. 23-1 at 18-19, 23-2 at 8-9, 23-3 at 8-9, 23-4 at 8-9, 23-5 at 8, 23-6 at 8, 23-7 at 8. The current TOU contain a separate Class Action Waiver and provide that "any claim that all or part of the Class Action Waiver is unenforceable, illegal, void or voidable … shall be decided by a court of competent jurisdiction and not by an arbitrator." Dkt. No. 23-1 at 19.

**DISCUSSION**

**I.  THE AGREEMENT TO ARBITRATE**

The first question is whether the parties formed an agreement to arbitrate. *See Norcia v. Samsung Telecomms. America, LLC*, No. 14-cv-00582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017). The Court will order arbitration only if there is no dispute of material fact as to contract formation. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Chegg bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotation marks and citations omitted). State contract law governs the formation question. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Under California law,[3] Chegg must show that its website provided "reasonably conspicuous notice of the terms [of use]," and that Keller "[took] some action, such as clicking a

---

[2] Chegg requested judicial notice of the TOUs. Dkt. No. 23. Judicial notice is granted because the TOUs are publicly available on Chegg's website or through the Internet Archive's Wayback Machine, and Keller offers no reason to think these documents are inaccurate. *Erickson v. Nebraska Machinery Company*, No. 15-cv-01147-JD, 2015 WL 4089849, at *5 n. 1 (N.D. Cal. July 6, 2015). Judicial notice of the arbitration agreements is perfectly appropriate for a motion to compel arbitration.

[3] California law applies because Chegg "has sued in California and no party has invoked the law of another jurisdiction." *Alonso*, 2018 WL 4027834, at *5 (citing *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001)).

4

button or checking a box, that unambiguously manifest[ed] his [] assent to those terms." *Berman*, 30 F.4th at 856.

The undisputed evidence again weighs in favor of arbitration. All users on or after February 19, 2019, were required to accept the TOU as a condition of accessing Chegg. Keller says he joined Chegg in 2014 or 2015, when he was 15 years old, and "used Chegg's services throughout his high school and college education, including for exam, homework, and project help." Dkt. No. 31 ¶ 34. His original complaint alleged that he had "been a Chegg customer for approximately the last six years," meaning 2016 through 2022. Dkt. No. 1 ¶ 15. These facts, which Keller himself proffers, establish that he accepted the revised TOUs at least once after February 2019, including the arbitration clause.

To put a finer point on it, Chegg also demonstrated that a "Josh Keller" with the email username joshuakeller99 joined Chegg in 2016 and accepted the TOUs on May 17, 2019, and April 15, 2021. Dkt. Nos. 22-1 ¶ 10; 36-1 ¶ 3 & Ex. N. Keller does not deny that joshuakeller99 is his email username or that he used Chegg on those dates. He put in no evidence whatsoever with respect to these facts. Keller offers only the wholly conclusory allegation in an unverified complaint that he was "not presented with a Terms of Use from Chegg[.]" Dkt. No. 31 ¶ 34. How or why that might be so was left unstated. Keller certainly did not present any evidence indicating that he did anything other than accept the revised TOUs and thereby agree to arbitration.

Overall, the undisputed facts establish that the parties formed a valid agreement to arbitrate. The pop-up window is a quintessential "clickwrap agreement[]" "in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (internal citation and quotations omitted). Courts routinely find clickwrap agreements valid and enforceable because the user must "affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (citing cases). *See also Oberstein*, 60 F.4th at 513. This is especially true when, as here, the agreement is presented in "an online pop-up window that contained the entire agreement within a scrollable textbox." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931

1   (2022). Consequently, the Court concludes that Keller consented to arbitration.

2   Keller's suggestion that consent cannot be found because he initially signed up for Chegg as a minor does not point to a different outcome. *See* Dkt. No. 35 at 19. Assuming that is true, the record demonstrates that Keller was at the age of majority when he accepted the updated TOUs. In addition, California law treats minority as a defense to contract enforcement, not contract formation. *See, e.g.,* Cal. Fam. Code §§ 6700, 6710. As stated in the ensuing discussion, the parties delegated questions of enforceability to the arbitrator. Consequently, the Court may disregard Keller's minor status for present purposes, with no material effect on the conclusion that he agreed to binding arbitration.

## II. THE DELEGATION CLAUSE

The question Keller poses of whether the arbitration clause covers his claims is reserved for the arbitrator. Since 2015, the TOUs have featured an express delegation clause. They provide that "any dispute" about the "enforcement, interpretation or validity" of the TOU will be finally settled by individual binding arbitration[.]" Dkt. No. 23-1 at 18. *Compare* Dkt. No. 23-7 at 8. "This is just the kind of language which establishes that 'the parties clearly and unmistakably agreed to arbitrate the question of arbitrability.'" *Cornet*, 2023 WL 187498, at *2 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). *See also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (upholding delegation clause that provided arbitrators with "the authority to decide issues relating to the 'enforceability, revocability, or validity of the'" arbitration agreements). Moreover, the fact that the Terms incorporate the AAA rules in and of itself compels arbitration of arbitrability. *See McLellan*, 2017 WL 4551484, at *3 (citing *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015)). Keller did not specifically challenge the validity of the delegation clause, so it is for the arbitrator, and not the Court, to decide arbitrability. *Id.* at *1.

## III. THE CLASS ACTION WAIVER

The remaining issue is the enforceability of the class action waiver, which the parties reserved for the Court. Keller says that the waiver is unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). He overreads *McGill*. The California Supreme Court concluded that a waiver of the right to seek "public injunctive relief" is "invalid and unenforceable." *McGill*, 2

Cal. 5th at 961. It did not bar class action waivers per se. As *McGill* acknowledged, California law does not require plaintiffs to obtain a class "to enjoin future wrongful business practices that will injure the public." *Id*. at 960. Here, the class action waiver says nothing at all about public injunctive relief, and certainly does not attempt to bar such relief. Consequently, the waiver stands.

## CONCLUSION

The case is ordered to arbitration on an individual basis. It is stayed and will be administratively closed pending the conclusion of arbitration. *See* 9 U.S.C. § 3.

**IT IS SO ORDERED.**

Dated: August 15, 2023

JAMES DONATO
United States District Judge